1
2
3
4
5
6
7
8
9
10
11
12
13
14
15

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| GREG OCCHIONERO, | ) | CV F 05-1184 AWI SMS |
| | ) | |
| Plaintiff, | ) | MEMORANDUM OPINION AND |
| | ) | ORDER DENYING DEFENDANTS' |
| v. | ) | MOTION TO DISMISS, MOTION |
| | ) | FOR A MORE DEFINITE |
| CITY OF FRESNO, and DOES 1 | ) | STATEMENT, AND MOTION TO |
| through 40, inclusive, | ) | STRIKE |
| | ) | |
| Defendants. | ) | |
| _____ | ) | (Documents #16 & #17) |

16    Plaintiff Greg Occhionero brings this civil rights action pursuant to 42 U.S.C. § 1983

17  against the City of Fresno and Doe Defendants, alleging that Defendants violated Plaintiff's

18  equal protection rights by their selective enforcement of the City of Fresno Municipal Code

19  ("Municipal Code").   The court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.

20  Pending before the court is Defendant City of Fresno's motion to dismiss, motion to strike, and

21  motion for a more definite statement.

22                                          **BACKGROUND**

23    On September 16, 2005, Plaintiff filed a complaint pursuant to 28 U.S.C. § 1983.

24  Plaintiff alleges that Defendants violated his equal protection rights.   Plaintiff alleges that

25  Defendants enforced the Municipal Code differently as to Plaintiff than other similarly situated

26  persons; the difference in treatment was intentional; and there was no rational basis for the

27  difference in treatment.   Plaintiff alleges that the difference in treatment was "punishment" for

28  Plaintiff complaining and/or based on a malicious or bad faith intent to injure Plaintiff.

On January 16, 2006, Defendant City of Fresno filed a motion to dismiss.   Defendant contends that this action is barred by the relevant statute of limitations.   Defendant contends that Plaintiff cannot maintain a claim for a violation of Plaintiff's equal protection rights because the class of one theory of equal protection does not apply in this situation.   And, assuming it does apply, Defendant contends Plaintiff has not alleged he was treated differently than others similarly situated and not alleged Defendant's actions were irrational.   Regardless, Defendant contends that Plaintiff cannot maintain a claim for municipality liability because the complaint does not allege a policy that operated to violate Plaintiff's rights or that the actors in this situation were official policy makers for Defendant.

On February 13, 2006, Plaintiff filed an opposition.   Plaintiff contends this action was filed within the statute of limitations because at least one act occurred within the limitations period and the earlier acts should not be struck because they contain background information. Plaintiff contends that the class of one theory of equal protection is available under Ninth Circuit authority, and the complaint sufficiently alleges the basis of Plaintiff's equal protection claim. Finally, Plaintiff contends that the complaint sufficiently alleges the basis of Plaintiff's theory of municipal liability.

On February 17, 2006, Defendant filed a reply.

## FACTUAL ALLEGATIONS

The complaint alleges that Plaintiff's parents, Michael and Vincenza Occhionero, own a commercial property located at 2680 North Miami, Fresno, California (the "Property").   Plaintiff uses the Property for recycling.

The complaint alleges that in the summer of 2002, Municipal Auditing Services ("MAS") wrote to Plaintiff asking whether he had a "City of Fresno Business Tax Certificate."   Plaintiff challenged the appropriateness of Defendant's relationship with MAS, asserting that it was an unconstitutional delegation of taxing authority.  A letter writing war began in July 2002, and continued through November 2002.

2

The complaint alleges that in February of 2003, Defendant, through its Code Enforcement Division, began an aggressive campaign against Plaintiff, which continued over several months. The only Notice of Violation that was issued related solely to materials being stored in the parking area and loading zone. The first inspection was not in response to a complaint regarding the Property, but was "proactive."

The complaint alleges that on June 16, 2003, Plaintiff filed a claim for damages with Defendant, challenging the propriety of the relationship between MAS and Defendant.  An amended claim was filed on July 14, 2003.   On July 28, 2003, Plaintiff filed a complaint in the Fresno County Superior Court naming, among others, Defendant; the complaint was never served.   On November 26, 2003, Plaintiff filed an amended complaint.

The complaint alleges that in retaliation for Plaintiff's challenge of Defendant's relationship with MAS, that on or about November 26, 2003, Defendant obtained an "Inspection and Abatement Warrant" (the "Warrant"), to come on to the Property and to inspect a supposed nuisance, namely, foam that was allegedly stacked too high. Thereafter, Defendant  gave "notice" that an "inspection" of the Property was going to take place. The body of the Notice states, in full, as follows:

> An **inspection** at 2680 N. Miami Avenue, Fresno, California will be conducted by the City of Fresno, Department of Planning and Development, Code Enforcement Division and the City of Fresno Fire Department on December 8, 2003 at 11:00 a.m.
> [¶] This **inspection** will be done pursuant to an Inspection/Abatement Warrant issued by the Fresno County Superior Court. A copy of the warrant will be delivered at the time
> of service."

(Emphasis added.)

The complaint alleges that there is no dispute that the one-page Notice is all that was provided, that the language of the Notice itself does not disclose that **abatement** would also be done pursuant to the Warrant, but rather, it was expressly limited to an **inspection**.   *After* service of the Notice and *prior* to the inspection/abatement, Plaintiff went to City Hall and spoke

3

to Defendant's employee who had posted the Notice and tried to find out what the Notice meant. The employee, Israel Trejo, refused to provide either a copy of the Warrant or an explanation of what it was.    The complaint alleges that Defendant refused to provide this information because it did not want Plaintiff to know what was about to happen.

The complaint alleges that on or about December 8, 2003, Code Enforcement began executing on the Warrant, and removed a variety of Plaintiff's materials over the next several days.

The complaint alleges that on or about December 31, 2003, Defendant issued a Notice of Public Nuisance Summary Abatement Billing, assessing charges against the Property's owners in the amount of $13,085.07, for costs allegedly incurred in abating the "nuisance."    The Property owners appealed the billing.

The complaint alleges that on April 1, 2004, following an evidentiary hearing, Defendant's Independent Hearing Officer issued its decision, upholding the charges in the amount of $13,085.07 (the "Cost-Recovery Award"). The Hearing Officer found that "The facts in this case do *not* support a finding of imminent danger justifying the use of summary abatement under FMC § 9-805.3 … [however] the City is entitled to recovery of the costs of the abatement conducted pursuant to the warrant under FMC Sections 1-604, *et seq.*" The Hearing Officer also stated, "It is troublesome that [petitioners] were not given a copy of the warrant when it was requested …." Defendant unsuccessfully argued that it could not, and did not, make the determination that the situation posed a threat "imminently dangerous …" until it got inside of the building; but this was belied by the following evidence:

> (a) Mr. Fultz of the Fresno Fire Department ("FFD") was in the building early on, approximately ten months prior to the abatement and saw the high-piled foam, and claims to have subsequently completed research which alerted him to the danger, but he could not explain why he waited to do something.
> (b) The City was aware of the foam "piled to the ceiling" for at least ten months prior to the abatement action, as is demonstrated by photographs taken on at least eight different occasions in months prior to the abatement action, and as memorialized in the Case History Report; with regard to each picture taken on each of the eight occasions, Mr. Fultz of the FFD testified that that was how things looked when he arrived on December 8th.

4

(c) Mr. Fultz testified (I) that, since the foam would not spontaneously combust, it could not pose a threat "imminently dangerous …" unless there was an ignition source present, and (ii) that there was *not* an ignition source present at the time of the abatement action.

The complaint alleges that on or about May 10, 2004, the Property owners filed a petition for writ of administrative mandamus in the Fresno County Superior Court, seeking to overturn the Cost-Recovery Award.  The Fresno County Superior Court agreed with the Hearing Officer that an "imminent danger" did *not* exist, and on or about November 12, 2004, overturned the Cost-Recovery Award.  Specifically, the Superior Court found that Defendant could not recover any of its abatement costs.

The complaint alleges that Plaintiff was treated differently than other similarly-situated persons or entities without any rational basis for the difference in treatment in that Defendant, through its agents, carried out an aggressive Code Enforcement campaign, applied criteria not having any basis in fact and not used to evaluate operations carried out by others, and which directly and indirectly targeted Plaintiff's recycling operation.  The complaint alleges that Defendant's actions were taken for the purpose of punishing Plaintiff for challenging the appropriateness of Defendant's relationship with MAS, asserting that it was an unconstitutional delegation of taxing authority, and/or based on a malicious and bad faith intent to injure Plaintiff.

The complaint alleges that the constitutional deprivation occurred as a direct and proximate result of the official policy and/or custom of Defendant.   The complaint alleges that the "official policy" of Defendant has manifested itself in decisions officially made by Defendant's policy-making officials and/or ratification of the deprivation by Defendant's policy-making officials, and/or rules or regulations promulgated, adopted, or ratified by the governmental entity's legislative body.   Plaintiff alleges that the "official policy" of Defendant has also manifested itself in having a custom of "getting Plaintiff" in that it is persistent and well settled and amounts to a de facto official policy.

*//*

1

**LEGAL STANDARD**

2 **A. Motion to Dismiss**

3        A complaint may be dismissed under Rule 12(b)(6) of the Federal Rules of Civil

4 Procedure if it appears beyond doubt that the plaintiff can prove no set of facts in support of the

5 claim that would entitle him to relief. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (citing

6 Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Balistreri v. Pacifica Police Department, 901 F.2d

7 696, 699 (9th Cir. 1990). A Rule 12(b)(6) dismissal can be based on the failure to allege a

8 cognizable legal theory or the failure to allege sufficient facts under a cognizable legal theory.

9 Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533-34 (9th Cir.1984). In considering a

10 motion to dismiss, the court must accept as true the allegations of the complaint in question,

11 Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), construe the pleading in

12 the light most favorable to the party opposing the motion, and resolve all doubts in the pleader's

13 favor. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

14        A Rule 12(b)(6) motion to dismiss for failure to state a claim is disfavored, see Hall v.

15 City of Santa Barbara, 833 F.2d 1270, 1274 (9th Cir.1986), and may be granted only in

16 extraordinary circumstances, see Gilligan v. Jamco Develop. Corp., 108 F.3d 246, 249 (9th

17 Cir.1997).   Essentially, a motion to dismiss for failure to state a claim tests plaintiff's

18 compliance with the liberal requirements of Rule 8(a)(2) of the Federal Rules of Civil Procedure.

19 See 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356, at

20 294-96. The burden imposed by Rule 8(a)(2) is a minimal one.   Rule 8(a)(2) requires parties

21 seeking relief in federal court by way of complaint to include "a short and plain statement of the

22 claim showing that the pleader is entitled to relief." Rule 8(a)(2).   When evaluating a complaint

23 for failure to state a claim, the question is not whether the facts stated in the complaint, if proven,

24 would entitle the plaintiff to any relief. Instead, the question is whether there is any set of "facts

25 that could be proved consistent with the allegations of the complaint" that would entitle plaintiff

26 to some relief. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002);  Hishon v. King &

27

28                                                    6

1   Spalding, 467 U.S. 69, 73 (1984); Diaz v. Gates, 380 F.3d 480, 482 (9th Cir. 2004).

2   **B.  Motion to Strike**

3          Rule 12(f) of the Federal Rules of Civil Procedure allows the court to strike from "any

4   pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous

5   matter."  The purpose of a Rule 12(f) motion is to avoid the costs that arise from litigating

6   spurious issues by dispensing with those issues prior to trial.  Sidney-Vinstein v. A.H. Robins

7   Co., 697 F.2d 880, 885 (9th Cir.1983).  Immaterial matter is defined as matter that "has no

8   essential or important relationship to the claim for relief or the defenses being pleaded." Fantasy,

9   Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th Cir 1993) (quoting 5 Charles A. Wright & Arthur R.

10  Miller, Federal Practice and Procedure § 1382, at 706-07 (1990)), *rev'd on other grounds*, 510

11  U.S. 517 (1994).  Impertinent matter is defined as "statements that do not pertain, and are not

12  necessary, to the issues in question." Fantasy, Inc. 984 F.2d at 1527.  Granting a motion to strike

13  may be proper if it will make the trial less complicated or if allegations being challenged are so

14  unrelated to plaintiff's claims as to be unworthy of any consideration as a defense and that their

15  presence in the pleading will be prejudicial to the moving party. Id.

16  **C.  Motion for a More Definite Statement**

17         "If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a

18  party cannot reasonably be required to frame a responsive pleading, the party may move for a

19  more definite statement before interposing a responsive pleading." Fed.R.Civ.P. 12(e).  A Rule

20  12(e) motion is proper only if the complaint is so indefinite that the defendant cannot ascertain

21  the nature of the claim being asserted.  See Federal Sav. and Loan Ins. Corp. v. Musacchio, 695

22  F.Supp. 1053, 1060 (N.D.Cal.1988); Famolare, Inc. v. Edison Bros. Stores, Inc., 525 F.Supp.

23  940, 949 (E.D.Cal.1981).  The court must deny the motion if the complaint is specific enough to

24  apprise defendant of the substance of the claim being asserted.  See Bureerong v. Uyawas, 922

25  F.Supp. 1450, 1461 (C.D.Cal.1996); FRA S.P.A. v. Surg- O-Flex of America, 415 F. Supp. 421,

26  427 (S.D.N.Y. 1976). The court should also deny the motion if the detail sought by a motion for

27

28                                                          7

more definite statement is obtainable through discovery. See Beery v. Hitachi Home Electronics

(America), Inc., 157 F.R.D. 477, 480 (C.D.Cal.1993).

## DISCUSSION

**A. Statute of Limitations**

Defendant contend that this action should be dismissed because it was filed outside of the

applicable statute of limitations.   In the alternative, Defendant contends that all allegations

occurring before September 16, 2003 should be struck as time barred.   Plaintiff opposes these

motions.  For the purposes of this motion, Plaintiff agrees that unconstitutional acts occurring

prior to September 16, 2003, cannot be separate constitutional violations.   However, Plaintiff

claims the allegations concerning events occurring before September 16, 2003, can be considered

as evidence that the conduct falling within the limitations period had an unconstitutional purpose.

Because 42 U.S.C. § 1983 contains no specific statute of limitations, federal courts

borrow state statutes of limitations for personal injury actions in section 1983 suits. See Wilson

v. Garcia, 471 U.S. 261, 276 (1985); Torres v. City of Santa Ana, 108 F.3d 224, 226 (9th Cir.

1997); Vaughan v. Grijalva, 927 F.2d 476, 478 (9th Cir. 1991).  In California, the applicable

statute of limitations for Section 1983 claims is two years.[1]   See Cal. Civ. Proc. Code § 335.1.

Federal law determines when a civil rights claim accrues.  See Elliott v. City of Union City, 25

F.3d 800, 801-802 (9th Cir. 1994).  Under federal law, a claim accrues when the plaintiff knows

or has reason to know of the injury which is the basis of the action.  RK Ventures, Inc. v. City of

Seattle, 307 F.3d 1045, 1058 (9th Cir.2002);  Kimes v. Stone, 84 F.3d 1121, 1128 (9th Cir.1996).

The complaint contains events that began occurring in February 2003 and continued until

2004.  To determine the timeliness of a claim, the court must determine whether the plaintiff has

alleged a discrete act that would violate the Constitution that occurred within the limitations

period. RK Ventures, Inc. v. City of Seattle,  307 F.3d 1045, 1058 (9th Cir. 2002).  The

---

[1]  For events occurring before January 1, 2003, the statute of limitations period is one
year. See former Cal.Code of Civil Procedure § 340(3).

1    complaint alleges that Plaintiff was intentionally treated different that other similarly situated

2    persons in Defendant's enforcement of the Fresno Municipal Code and the difference in

3    treatment was a result of Plaintiff's exercise of his constitutional rights to complain about MAS.

4    The complaint includes acts that occurred within the limitation period.   The complaint alleges

5    that on or about November 26, 2003, Defendant obtained the Inspection and Abatement Warrant.

6    The complaint alleges Defendant commenced abatement action in December 2003.   Defendant

7    filed its Formal Notice of Public Nuisance Summary Abatement Billing on or about December

8    31, 2003.   Because the complaint contains alleged acts that violated Plaintiff's equal protection

9    rights that occurred after September 16, 2003, Plaintiff's equal protection claim is not subject to

10    dismissal on statute of limitations grounds.

11         Defendant asks that the court strike the allegations concerning events prior to September

12    16, 2003.   Plaintiff concedes that discriminatory acts occurring before September 16, 2003, are

13    likely time barred.   However, the court will not strike these allegations from the complaint.

14    Time barred acts cannot be used to support claims of constitutional violations under 42 U.S.C. §

15    1983.  Carpinteria Valley Farms, Ltd. v. County of Santa Barbara,  344 F.3d 822, 829 (9th Cir.

16    2003).   These time barred acts, however, may be used as evidence to establish motive and to put

17    timely-filed claims in context.   Id.  When determining whether the defendant's conduct falling

18    within the limitations period raises a triable issue of fact, the court must analyze such conduct by

19    considering any of the background evidence in the record, including acts barred by the statute of

20    limitations.  RK Ventures, Inc. v. City of Seattle,  307 F.3d 1045, 1050 (9th Cir. 2002).    Rule

21    12(f) allows the court to strike from "any pleading any insufficient defense or any redundant,

22    immaterial, impertinent, or scandalous matter."   Here, the events occurring before September 16,

23    2003 concern Defendant's alleged motive behind their actions after September 16, 2003.

24    Because the events occurring before September 16, 2003, may be considered as background

25    evidence and to establish motive, these events are not redundant, immaterial, impertinent, or

26    scandalous.   Thus, Defendants' motion to strike must be denied.

27

28                      9

1  **B. Equal Protection Class of One**

2      The Supreme Court has held that the equal protection clause means "that no State shall

3  deny to any person within its jurisdiction the equal protection of the laws, which is essentially a

4  direction that all persons similarly situated should be treated alike." City of Cleburne, Texas v.

5  Cleburne Living Center, 473 U.S. 432, 439 (1985); Clark v. California, 123 F.3d 1267, 1270 (9th

6  Cir. 1997). The "purpose of the equal protection clause of the Fourteenth Amendment is to

7  secure every person within the state's jurisdiction against intentional and arbitrary discrimination,

8  whether occasioned by express terms of a statute or by its improper execution through duly

9  constituted agents." Sioux City Bridge Co. v. Dakota County, Neb., 260 U.S. 441, 445 (1923).

10 The Equal Protection Clause is intended to protect every person within a state's jurisdiction

11 "against intentional and arbitrary discrimination, whether occasioned by express terms of a

12 statute or by its improper execution through duly constituted agents." Village of Willowbrook v.

13 Olech, 528 U.S. 562, 564 (2000) (per curiam) (citations omitted).

14 ***1.  Applicability of Olech's Class of One***

15     The complaint alleges that Defendant violated Plaintiff's equal protection rights because

16 Plaintiff was treated differently than other persons or entities that collected materials for

17 recycling and re-sale.  Defendant contends that the "class of one" theory of equal protection

18 discussed in Village of Willowbrook v. Olech, 528 U.S. 562 (2000), does not apply to this action.

19 Defendant argues that several courts have refused to apply to Olech to situations where a plaintiff

20 is seeking review of an executive and administrative decision.   Plaintiff contends that under the

21 authority binding on this court, Plaintiff can maintain an equal protection claim based on Olech.

22     Where state action does not implicate a fundamental right or a suspect classification, the

23 Plaintiff can establish a "class of one" equal protection claim.   Squaw Valley Development Co.

24 v. Goldberg,  375 F.3d 936, 944 (9th Cir. 2004).   The Equal Protection Clause protects a "class of

25 one" when a plaintiff can show that he or she has been intentionally treated differently than

26 others similarly situated and there is no rational basis for the different treatment.  Id.; SeaRiver

27

28                                        10

1  Mar. Fin. Holdings, Inc. v. Mineta, 309 F.3d 662, 679 (9th Cir. 2002).    "Where an equal

2  protection claim is based on 'selective enforcement of valid laws,' a plaintiff can show that the

3  defendants' rational basis for selectively enforcing the law is a pretext for 'an impermissible

4  motive.'"   Squaw Valley,  375 F.3d at 944 (quoting Freeman v. City of Santa Ana, 68 F.3d 1180,

5  1187-88 (9th Cir.1995).

6         Defendant contends that Olech is not applicable to the facts of this case.   In Olech, a

7  property owner alleged that the city violated her equal protection rights when it demanded a

8  33-foot easement as a condition of connecting her property to the municipal water supply but

9  only required only a 15-foot easement from other similarly situated property owners. Olech, 528

10  U.S. at 565.   The plaintiff asserted that the city's discriminatory behavior was irrational and

11  wholly arbitrary and motivated by ill will.   The district court dismissed the lawsuit for failure to

12  state a cognizable claim, but the Court of Appeals for the Seventh Circuit reversed and the

13  Supreme Court affirmed.   The Supreme Court held that the Equal Protection Clause does protect

14  a cause of action on behalf of a "class of one," where the plaintiff does not allege membership in

15  a class or group, but alleges that she has been intentionally treated differently from others

16  similarly situated and that there is no rational basis for the difference in treatment.   Id. at 56-64.

17  In addition, the Supreme Court noted the plaintiff had also alleged the defendant's demand was

18  irrational and wholly arbitrary and her property was connected after receiving a clearly adequate

19  15-foot easement.   Id. at 565.   The Supreme Court concluded that "these allegations, quite apart

20  from the Village's subjective motivation, are sufficient to state a claim for relief under traditional

21  equal protection analysis.  Id.

22         In Squaw Valley Development Co. v. Goldberg,  375 F.3d 936 (9th Cir. 2004), the

23  plaintiff filed an action under 42 U.S.C. § 1983, alleging that two employees of the California

24  Regional Water Quality Control Board, Lahontan Region had subjected it to selective and

25  over-zealous regulatory oversight concerning the application of the Basin Plan and Waste

26  Discharge Requirements, which set forth water quality standards for the surface and

27

28                                               11

1   groundwater of the Lahontan Region and allowances for the discharge of surface flows generated

2   within the facility.  Id. at 938-39.    The Ninth Circuit found a plaintiff could have a cause of

3   action under Olech when state action does not implicate a fundamental right or a suspect

4   classification, if the "plaintiff can establish a 'class of one' equal protection claim by

5   demonstrating that it 'has been intentionally treated differently from others similarly situated and

6   that there is no rational basis for the difference in treatment.'"  Id. at 944 (quoting Olech, 528

7   U.S. at 564).  The Ninth Circuit found that if an equal protection challenge is based on

8   enforcement of valid laws,  a plaintiff must show that the defendant's rational basis for

9   selectively enforcing the law is a pretext for an impermissible motive.  Id. at 944.   The Ninth

10   Circuit indicated that to show an equal protection violation based on Olech, the plaintiff needed

11   to show: (1) disparate treatment, i.e. it was singled out for unique regulatory and enforcement

12   treatment; (2) the defendant's actions were arbitrary or irrational and not supported by a rational

13   basis; and (3) even if there was a stated rational basis for the unequal treatment, that proffered

14   basis was a pretext the defendants were motivated by malignant animosity.   Id. at 936.  Because

15   the defendants were enforcing valid laws, the Ninth Circuit confirmed that the plaintiff must

16   show that the defendant's conduct was motivated by animus.  Id. 375 F.3d at 948.

17        Some courts have criticized the possible far ranging reaches of Olech's class of one

18   theory of equal protection.    Many lower courts have struggled to define the contours of class of

19   one cases, and they "have recognized that, unless carefully circumscribed, the concept of a

20   class-of-one equal protection claim could effectively provide a federal cause of action for review

21   of almost every executive and administrative decision made by state actors." Jennings v. City of

22   Stillwater, 383 F.3d 1199, 1210-11 (10th Cir. 2004).    It is almost always possible for persons

23   aggrieved by government action to produce evidence that they were treated differently from

24   others.   Id. at 1211;  Macone v. Town of Wakefield, 277 F.3d 1, 10 (1st Cir. 2002).   Federal

25   courts could become "general-purpose second-guessers of the reasonableness of broad areas of

26   state and local decision making: a role that is both ill-suited to the federal courts and offensive to

27

28                         12

1   state and local autonomy in our federal system." Jennings v. City of Stillwater, 383 F.3d at

2   1211.   To avoid this situation, some courts have attempted to curb the reach of class of one

3   equal protection cases by requiring that plaintiffs present evidence not merely of arbitrariness but

4   of malice or ill-will against the plaintiff. Jennings, 383 F.3d at 1211; Discovery House, Inc. v.

5   Consol. City of Indianapolis, 319 F.3d 277, 283 (7th Cir. 2003);  Harlen Assoc. v. Inc. Vill. of

6   Mineola, 273 F.3d 494, 499-500 (2d Cir.2001); Williams v. Pryor, 240 F.3d 944, 951 (11th Cir.

7   2001).

8          Despite limitations imposed by other courts, in the Ninth Circuit "[a] successful equal

9   protection claim may be brought by a class of one, when the plaintiff alleges that it has been

10  intentionally treated differently from others similarly situated and that there is no rational basis

11  for the difference in treatment." Seariver Mar. Fin. Holdings Inc. v. Mineta, 309 F.3d 662, 679

12  (9th Cir.2002) (citing Olech, 528 U.S. at 564).   However, the court does not find the Ninth

13  Circuit's standard differs substantially from other courts.   The Ninth Circuit has recognized that

14  if there is a rational basis for the unequal treatment, such as the enforcement of valid laws, the

15  plaintiff must show that proffered basis was a pretext and the defendants were really motivated

16  by malignant animosity. Squaw Valley, 375 F.3d at 936 & 948.  If the defendants were enforcing

17  valid laws, the Ninth Circuit has confirmed that the plaintiff must show that the defendant's

18  conduct was motivated by animus. Id. 375 F.3d at 948.

19         Based on the Ninth Circuit authority, Plaintiff may proceed on an equal protection claim

20  based on Olech.   Plaintiff alleges that he was treated differently than other similarly situated

21  individuals.   To the extent that Defendant may argue that they had a rational basis to enforce

22  valid municipal codes, Plaintiff alleges that he was treated differently for the purpose of

23  punishing him for challenging the appropriateness of Defendant's relationship with MAS.

24  Plaintiff has alleged animus for Defendant's application of the code.   This is not the case of

25  Plaintiff merely believing he has been treated differently from others, requiring the court to

26  second guess the reasonableness of Defendant's decisions when enforcing the Municipal Code.

27

28                                                13

1   Under the Ninth Circuit's authority in <u>Squaw Valley</u>, Plaintiff may proceed with an equal

2   protection claim based on <u>Olech</u>.

3   ***2.   Duplicative of a Retaliation Claim***

4         In the reply brief, Defendant contends that to the extent Plaintiff claims Defendant treated

5   him differently in retaliation for his complaints, Plaintiff's claim is one for retaliation, not equal

6   protection.   This argument is not properly before the court.   The court cannot grant a motion

7   based on a new argument presented for the first time in a reply brief.   <u>Simpson v. Lear Astronics</u>

8   <u>Corp.</u>, 77 F.3d 1170, 1176 & n. 4 (9th Cir.1995);  <u>United States v. Traynor</u>, 990 F.2d 1153, 1159

9   (9th Cir.1993); <u>Eberle v. City of Anaheim</u>, 901 F.2d 814, 818 (9th Cir.1990); <u>In re Lal</u>, 2002 WL

10  449661 *3 (N.D.Cal. Mar 15, 2002); <u>United States v. Boyce</u>, 148 F.Supp.2d 1069, 1085 (S.D.

11  Cal. 2001);  <u>United States ex rel. Giles v. Sardie,</u> 191 F.Supp.2d 1117, 1127 (C.D. Cal. 2000).

12        This is not a circumstance where Plaintiff's complaint is so obviously deficient that the

13  court should sua sponte address this issue.   The Ninth Circuit has never specifically addressed

14  the question of whether differential treatment on the basis of expressive activity gives rise to an

15  equal protection claim, separate and apart from a First Amendment retaliation claim, but the

16  Ninth Circuit has noted other courts have reached different results on this issue. <u>Gilbrook v. City</u>

17  <u>of Westminster</u>,  177 F.3d 839, 870 & n.16 (9th Cir. 1999).   The Ninth Circuit has allowed an

18  equal protection claim to proceed on a theory that the plaintiff's equal protection rights were

19  denied because the defendant's decisions regarding his applications had been made by biased and

20  unfair decision makers motivated to retaliate against him.   <u>See</u> <u>Carpinteria Valley Farms, Ltd. v.</u>

21  <u>County of Santa Barbara</u>, 344 F.3d 822, 830 (9th Cir. 2003).   At this time, the court declines to

22  dismiss the equal protection claim on the ground that Plaintiff must address the facts underlying

23  this action in a retaliation claim.

24  ***3.   Elements of Olech***

25        Defendant contends that Plaintiff has not sufficiently alleged the elements of an equal

26  protection claim under <u>Olech</u> in the complaint.   Plaintiff contends that the complaint satisfies

27

28                    14

1  Rule 8's pleading standards.

2        As discussed above, to show an equal protection violation, Plaintiff must prove (1) that

3  others similarly situated were treated different; (2) Defendant's action were without a rational

4  basis; and (3) if there is a stated rational basis for the unequal treatment, Defendant's proffered

5  basis is pretext.   Squaw Valley, 375 F.3d 944-948.    Disparate government treatment for an

6  equal protection claim based on a class of one "will survive rational basis scrutiny 'as long as it

7  bears a rational relation to a legitimate state interest.'" Id. at 944 (quoting Patel v. Penman, 103

8  F.3d 868, 875 (9th Cir.1996).    Selective enforcement of valid laws does not make a defendant's

9  action without a rational basis, but "there is no rational basis for state action that is malicious,

10 irrational or plainly arbitrary."   Squaw Valley, 375 F.3d 944 (quotes omitted).   In the Ninth

11 Circuit it is clearly established that a plaintiff may pursue an equal protection claim by showing

12 that the defendant's asserted rational basis was merely a pretext for malignant animosity.   Id. at

13 936, 944-45, 948.

14       Here, as in Olech, Plaintiff alleges that Defendant intentionally enforced the Municipal

15 Code against him, but not against others similarly situated.   Plaintiff alleges that he was treated

16 differently than other persons or entities that collected materials for recycling and re-sale to

17 which Defendant did not execute warrants, did not remove materials, and did not cite the person

18 or entity.   Rule 8(a) of the Federal Rules of Civil Procedure requires only "a short and plain

19 statement of the claim showing that the pleader is entitled to relief."   Fed.R.Civ.P. 8(a)(2).   The

20 purpose of the complaint is to provide the opposing party with fair notice of the claim against it.

21 Lynn v. Sheet Metal Workers' Intern. Ass'n, 804 F.2d 1472, 1482 (9th Cir. 1986).   The court

22 does not find that Rule 8(a) requires Plaintiff to allege in his complaint the names of persons who

23 also collected materials for recycling and re-sale and did not have the Municipal Code applied

24 against them in the same fashion as Plaintiff.   It is possible that Plaintiff will not be able to find

25 evidence of others who are similarly situated to him.   However, the court finds that the

26 complaint is sufficient for Rule 8(a)'s purposes.

27

28                                          15

1    The parties agree that mere differences in enforcement of the Municipal Code is not

2 sufficient to show Defendant's actions were not rationally related to a legitimate governmental

3 interest.   Plaintiff alleges that Defendant's intentionally enforced the Municipal Code against

4 Plaintiff more strictly than against other persons to punish Plaintiff after he complained about

5 MAS's relationship with the City.   The court finds that these allegations are sufficient to allege

6 an animus for Defendant's actions.  Plaintiff has alleged a theory by which Defendant's conduct

7 was motivated by malignant animosity rather than simple enforcement of the Municipal Code.

8 Liberally construing the complaint and making all reasonable inferences in favor of Plaintiff, the

9 court finds that Plaintiff sufficiently pleads an equal protection claim based on Olech.

10   **C.  Municipal Liability**

11    Defendant contends that Plaintiff cannot maintain a claim against the Defendant because

12 the Code Enforcement Inspector could not establish municipal policy for Defendant.   Plaintiff

13 contends that the complaint's allegations are sufficient under Rule 8(a).

14    Local governments can be "persons" subject to liability under 42 U.S.C. § 1983.  Monnell

15 v. Dep't of Social Servs., 436 U.S. 658, 690 (1978).  However, a local government unit may not

16 be held responsible for the acts of its employees under a respondent superior theory of liability.

17 Monell, 436 U.S. at 691; Fuller v. City of Oakland, 47 F.3d 1522, 1534 (9th Cir. 1995).  Rather,

18 to state a claim for municipal liability, a plaintiff must allege that he suffered a constitutional

19 deprivation that was the product of a policy or custom of the local government unit.  See City of

20 Canton, Ohio, v. Harris, 489 U.S. 378, 385 (1989).   A Section 1983 plaintiff may establish local

21 government liability based on official policy or custom only by (1) alleging and showing that a

22 city or county employee committed the alleged constitutional violation under a formal

23 governmental policy or longstanding practice or custom that is the customary operating

24 procedure of the local government entity; (2) establishing that the individual who committed the

25 constitutional tort was an official with final policy-making authority and that the challenged

26 action itself was an act of official governmental policy which was the result of a deliberate choice

27

28                                            16

made among various alternatives; or (3) proving that an official with final policy-making authority either delegated policy-making authority to a subordinate or ratified a subordinate's unconstitutional decision or action and the basis for it. Monnell, 691; Gillette v. Delmore, 979 F.2d 1342, 1346-47 (9ᵗʰ Cir. 1992).

## *1.  Ratification*

Defendant contends that the Fresno City Charter vests final policymaking authority in the Mayor and City Counsel, and the Code Enforcement Inspector, who appears to have committed the actions in this case, is not a final policy maker and no final policy maker ratified the Inspector's actions.  Plaintiff alleges that the complaint sufficiently alleges a ratification theory of municipal liability.

The determination of who has final policymaking authority is a question of law for the court to decide, not the jury, based on state law, which includes "state and local positive law as well as custom or usage having the force of law." Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 737 (1989), *superseded by statute on other grounds as stated in* Federation of African Am. Contrs. v. City of Oakland, 96 F.3d 1204, 1205 (9ᵗʰ Cir.1996)).  The Supreme Court has held that, for ratification, the final policymaker must make a deliberate choice from among various alternatives to follow a particular course of action. Pembaur v. City of Cincinnati, 475 U.S. 469, 483-84 (1986). The final policymaker must have approved not only the subordinate's decision but also the basis for it. Praprotnik, 485 U.S. at 127; Christie v. Iopa, 176 F.3d 1231, 1239 (9ᵗʰ Cir. 1999).  "Accordingly, ratification requires, among other things, knowledge of the alleged constitutional violation." Christie, 176 F.3d at 1239.

The complaint alleges that the official policy of Defendant manifested itself in decisions that were ratified by Defendant's policy making officials.   Nothing in Rule 8(a) requires Plaintiff, at this stage of the proceedings,  to specifically name who ratified the unconstitutional conduct.   Defendant is on notice that one of Plaintiff's theories of liability is that a final policymaker ratified the actions against Plaintiff.   Here, it is not clear "that no relief could be

1  granted under any set of facts that could be proved consistent with the allegations."

2  Swierkiewicz, 534 U.S. at 512.

3  **_2.  Policy Maker_**

4         Another allegation in the complaint is that the decisions were made by Defendant's

5  policy-making officials.  Rule 8(a) does not require Plaintiff, at this stage of the proceedings, to

6  specifically name the policy maker who made the decision which amounted to a violation of

7  Plaintiff's rights.   Defendant is on notice that one of Plaintiff's theories of liability is that a final

8  policymaker committed the constitutional violations.    It is not clear "that no relief could be

9  granted under any set of facts that could be proved consistent with the allegations."

10  Swierkiewicz, 534 U.S. at 512.

11  **_3.   Practice or Custom_**

12         Governmental liability can be imposed when conduct reflects "practices of ... officials

13  permanent and well-settled as to constitute a 'custom or usage' with the force of law."   Monell,

14  436 U.S. at 691.   "Custom" differs from "policy" in that it is not necessary that the custom has

15  received formal approval through the municipality's official decision making channels.  Id. at

16  690-91.   Acts of omission, as well as commission, can serve as the basis for finding an

17  unconstitutional policy or custom. Oviatt v. Pearce, 954 F.2d 1470, 1477 (9th Cir.1992).

18         The complaint alleges that Defendant had a persistent and discriminatory practice of

19  obstructing Plaintiff in his business dealings because he had challenged certain activities.  "In

20  this circuit, a claim of municipal liability under section 1983 is sufficient to withstand a motion

21  to dismiss 'even if the claim is based on nothing more than a bare allegation that the individual

22  officers' conduct conformed to official policy, custom, or practice." Galbraith v. County of

23  Santa Clara,  307 F.3d 1119, 1127 (9th Cir. 2002);  Karim-Panahi v. Los Angeles Police Dep't,

24  839 F.2d 621, 624 (9th Cir. 1988); Shah v. County of Los Angeles, 797 F.2d 743, 747 (9th Cir.

25  1986).  Defendant is on notice that one of Plaintiff's theories of liability is that Defendant had the

26  custom of obstructing Plaintiff in his business dealings that were discriminatory.   It is not clear

27

28                                          18

1  "that no relief could be granted under any set of facts that could be proved consistent with the

2  allegations." <u>Swierkiewicz</u>, 534 U.S. at 512.  Thus, the complaint meets Rule 8(a)'s pleading

3  standards and states a claim for municipal liability.

4  **D.  More Definite Statement**

5          In its moving papers, Defendant requests a more definite statement.   However, the exact

6  basis of this request is unclear.   A more definite statement should be required when a complaint

7  "is so vague or ambiguous that a party cannot reasonably be required to frame a responsive

8  pleading, the party may move for a more definite statement before interposing a responsive

9  pleading." Fed.R.Civ.P. 12(e).   A Rule 12(e) motion is proper only if the complaint is so

10  indefinite that the defendant cannot ascertain the nature of the claim being asserted. <u>See</u> <u>Federal</u>

11  <u>Sav. and Loan Ins. Corp. v. Musacchio</u>, 695 F.Supp. 1053, 1060 (N.D.Cal.1988); <u>Famolare, Inc.</u>

12  <u>v. Edison Bros. Stores, Inc.</u>, 525 F.Supp. 940, 949 (E.D.Cal.1981).   Here, the court does not find

13  the complaint is too indefinite that Defendant cannot form a proper response.   Plaintiff is

14  alleging an equal protection violation based on <u>Olech</u>.   Plaintiff alleges Defendant is liable for

15  the equal protection violation because a policy maker ratified the unconstitutional conduct, a

16  policy maker committed the unconstitutional conduct, and/or Defendant has a custom of

17  discriminatory conduct toward Plaintiff.   The court must deny Defendant's motion because the

18  complaint is specific enough to apprise defendant of the substance of the claim being asserted.

19  <u>See</u> <u>Bureerong v. Uyawas</u>, 922 F.Supp. 1450, 1461 (C.D.Cal.1996); <u>FRA S.P.A. v. Surg- O-Flex</u>

20  <u>of America</u>, 415 F. Supp. 421, 427 (S.D.N.Y. 1976).   Additional details Defendant may seek can

21  be obtained through discovery.   Thus, Defendant's motion for a more definite statement must be

22  denied.

23  //

24  //

25

26

27

28                                              19

1

**ORDER**

2          Based on the above memorandum opinion, the court ORDERS that Defendant's motion

3   to dismiss, motion for a more definite statement, and motion to strike are DENIED.

4   IT IS SO ORDERED.

5   **Dated:      March 3, 2006                         /s/ Anthony W. Ishii**

6   9h0d30                                    UNITED STATES DISTRICT JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                           20